Richard M. Lorenzen, Bar No. 006787
Perkins Coie Brown & Bain P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
RLorenzen@perkinscoie.com
Telephone: 602.351.8000
Facsimile: 602.648.7000

Attorneys for Bank of America, N.A., as Trustee
for the Registered Holders of GS Mortgage
Securities Corporation II Commercial Mortgage
Pass-Through Certificates, Series 2004-C1

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| In re | Case No.: 2:10-bk-09233-RTB |
|---|---|
| BRYAN/MOORE DEVELOPMENT, LLC, | Chapter 11 |
| Debtor. | **OBJECTION TO DISCLOSURE STATEMENT**<br><br>Hearing Date: September 8, 2010<br>Hearing Time: 9:00 a.m.<br>Hearing Location: Courtroom 703<br>230 N. First Avenue<br>Phoenix, AZ 85003 |

Bank of America, N.A., as Trustee for the Registered Holders of GS Mortgage Securities Corporation II Commercial Mortgage Pass-Through Certificates, Series 2004-C1 ("Bank of America"), by and through its undersigned counsel, hereby objects to the Debtor's *Disclosure Statement* (the "Disclosure Statement"). This objection is based upon the pleadings on file in this matter and the attached memorandum of points and authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION.**

Bryan/Moore Development, LLC ("Debtor") is indebted to Bank of America as of September 1, 2010, in an amount in excess of $14,700,000. The Disclosure Statement under-reports the amount of Bank of America's claim by a significant degree, based upon the

assertion that the Debtor is not liable for any default interest, late charges, or other charges authorized by the Loan Documents. The basis for this assertion is that the Debtor will "cure all defaults under the loan document," through the plan of reorganization (the "Plan"), relying upon *In re Phoenix Business Park Limited* Partnership, 257 B.R. 517 (Bankr. D. Ariz. 2001); *In re Zamani*, 390 B.R. 680 (Bankr. N.D. Cal. 2008).[1] However, this reflects a fundamental flaw in the Debtor's Plan. The loan in question has matured according to its terms, and is not in any way being cured under the Plan. Instead, the Plan proposes to restructure the loan well beyond its pre-existing maturity by providing for payments of interest only (at the contract rate) for 3 years, with a deferred maturity occurring at the end of that 3 year period. The type of "cure" for a matured loan that would permit the Debtor to pay interest at the contract rather than default rate would be, in contrast, payment in full of the entire unpaid principal balance, plus accrued interest at the contract rate and other charges under the Loan Documents. *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1342 (9th Cir. 1988). Moreover, the amount of the default rate interest is presumptively the amount called for in the contract. *General Electric Capital Corp. v. Future Media Productions, Inc.*, 547 F.3d 956 (9th Cir. 2008).

The current projected annual interest payments on the indebtedness, including interest at the default rate would be approximately $1,280,000. This amount exceeds the Debtor's estimated net operating income from the property for each of the 3 years of payments called for under the Plan.

**II.    THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION**

The concept of "adequate information" which is required pursuant to 11 U.S.C. § 1125(a)(1) for the approval of a disclosure statement has been defined by case law. As stated in *In re Unichem Corporation*, 72 B.R. 95 (Bankr. N.D. Ill. 1987):

> The primary purpose of a disclosure statement is to provide all

---

[1] Disclosure Statement, 12:10-14.

> material information which creditors and equity security holders affected by the plan need in order to make an <u>intelligent decision</u> whether to vote for or against the plan. (citations omitted).

*Id*. at 97. (emphasis supplied).

While it is impossible to articulate a universally applicable rule for the information which would be required in every case to enable creditors and interest holders to make an informed decision, certain courts have developed minimal categories of information which must be contained in a disclosure statement. For example, in *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984), the court held:

> Relevant factors for evaluating the adequacy of a disclosure statement may include (1) the events which lead to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Id.* at 568. *See also, In re A.C. Williams Co.*, 25 B.R. 173 (Bankr. N.D. Ohio 1982).

### A. Inadequate Evidence of Ability to Perform.

The Disclosure Statement is inadequate because it fails to contain information demonstrating that the Debtor would have the ability, under any circumstances, to make the required payments to Bank of America if it is required to pay interest at the default rate. Although the amount of the interest rate could, at first blush, be seen as simply a confirmation

issue, it is also important for it to be addressed at this stage of the proceeding. First, it may simply be more efficient to resolve this purely legal issue at this stage of the proceeding, since that may avoid additional delays and expenses for all parties that would be associated with a full-blown confirmation hearing, particularly when it is so clear that the Plan does not "cure" all of the defaults under the Loan Documents. Secondly, the Disclosure Statement is somewhat misleading on this point to the extent that it provides that the Debtor will not pay default interest, late charges, or other charges, "unless otherwise determined by the court . . . ."[2] At the very least, the Disclosure Statement should disclose that there is a serious issue with regard to the Debtor's obligation to pay interest at the default rate, and make detailed disclosures as to how, if at all, the Debtor would have the ability to make the payments at the higher rate.

Similarly, the Disclosure Statement fails to disclose the source of funds that are to be used to pay administrative claims and unsecured claims. Instead, the Disclosure Statement states merely that it "is assumed" that the Debtors will have sufficient funds to pay those claims.[3] At the very least, the Debtor should disclose to the Court and all creditors, how it contemplates obtaining such funds, and why it is reasonable to presume that sufficient funds will be available in a timely fashion, before committing all parties to the additional time and expense of the confirmation process, only to learn that sufficient funds are not available.

B. **Insufficient Disclosures Regarding Potential Avoidance Actions.**

Bank of America is informed and believes that the Debtor improperly paid approximately $250,000 from Bank of America's collateral, and in violation of the Loan Documents, to insiders of the Debtor during the 1 year prior to the filing of the Debtor's bankruptcy petition. There is no discussion whatsoever in the Disclosure Statement regarding those transfers, the potential avoidance of such transfers, or whether the Debtor intends to pursue the recovery of any such transfers. Such disclosures should be required.

---

[2] Disclosure Statement, 12:10-11.
[3] Disclosure Statement, 15:1.

WHEREFORE, Bank of America objects upon the limited grounds set forth above to the adequacy of the Disclosure Statement, and respectfully requests that the Court require the additional disclosures referred to above, and consider establishing a procedure to resolve the legal issues concerning the appropriate interest rate prior to a confirmation hearing on the Plan, together with such other and further relief as the Court may deem just and proper.

September 1, 2010.	**PERKINS COIE BROWN & BAIN PA**

By:	*/s/ Richard M. Lorenzen (006787)*
Richard M. Lorenzen
2901 North Central Ave., Suite 2000
Phoenix, Arizona 85012
Attorneys for Bank of America, N.A., as Trustee for the Registered Holders of GS Mortgage Securities Corporation II Commercial Mortgage Pass-Through Certificates, Series 2004-C1

Original electronically filed, and a
copy via First Class mail, this
September 1, 2010, upon the following:

Larry Watson, Esq.
**OFFICE OF THE
UNITED STATES TRUSTEE**
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

Pernell W. McGuire
**MCGUIRE GARDNER, PLLC**
320 N. Leroux, Suite A
Flagstaff, AZ 86001
Counsel for Debtor

20 Largest Unsecured Creditors
shown on the attached Exhibit A.

/s/ Kathryn Hardy

60642-0037/LEGAL19074563.1